The United States v. Department of Justice v. Hines County The first case of the morning, United States v. Boukamp, 22-11035, Ms. Graff. Good morning. May it please the Court, Jessica Graff for the appellant. Your Honors, at stake in this case is the fundamental right to fairness in our judicial system. Tommy Boukamp was born with a developmental disability that ultimately led to one unyielding irrational belief about his case, that the charges against him would be dropped once he was allowed to speak with M and everyone saw that they were in love and should be together. And that belief infected everything, from his decision to go to trial, to his ability to consult with counsel, to his trial strategy. And then when he went to trial, based on that irrational belief, the judge inappropriately and repeatedly instructed the jury that Mr. Boukamp could testify, but chose not to. And Your Honors, while I am happy to answer the Court's questions about any of the issues raised in the briefs, for purposes of my limited time today, I plan to focus on the first two. First that Mr. Boukamp was not competent to stand trial because his autism spectrum disorder prevented him from making a rational decision about his case. And second, the District Court violated Mr. Boukamp's Fifth Amendment right by continually commenting on his decision not to testify in front of the jury. Now, turning to my first point, the District Court made two critical errors when it found that Mr. Boukamp was competent to stand trial. First, the Court applied the wrong standard when it determined that a defendant who is And second, when it determined that Mr. Boukamp's factual understanding of court proceedings in general outweighed his fixed beliefs about his own case. Now this is an unusual competency case, because it's not that Mr. Boukamp doesn't understand the mechanics of a trial or the nature of the facts that are alleged against him. And we're not dealing with a defendant with a low IQ or a diagnosis like schizophrenia, but we are dealing with someone who, due to a congenital medical condition, fixated on an irrational belief about his case that infected every aspect of it. And the District Court's factual findings on this point should have been dispositive under the Dusky Standard. We can see on page 681 of the record that the District Court found, one, that Mr. Boukamp has ASD, and two, that because of his ASD, he maintained fixed beliefs about his case. It's important to understand that by fixed beliefs, I don't mean that Mr. Boukamp was The evidence in the record makes clear that ASD can include a hyperfixation on a particular topic and unshakable beliefs about it, to the point that the person can hear new information, can see evidence contradicting that belief, but they still can't budge. And for Mr. Boukamp, that meant that he held Still sounds like stubborn. The difference here is that we have a diagnosis that was accepted by the court, and that diagnosis includes the fact that we're dealing with someone who has a brain condition they were born with. And in this instance, it means that he can't move off of a belief just because he sees evidence that contradicts it. And so that distinguishes this case from another one where a defendant may just not want to accept the truth, because Mr. Boukamp physically cannot move off a belief. I understand correctly that the record of it includes the fact that he removed the—sorry, I'm not familiar with the terminology—the chip from the girl's phone to avoid detection? Yes. I mean, as you have acknowledged before, he is quite mentally capable of strategizing and avoiding detection. Correct. We're not alleging that Mr. Boukamp is not a smart person. He's very smart. And he definitely understands what was alleged. He understands what he's been charged with. But what's different here is that even though he understands those things— And he didn't want to be caught. Correct. He only knew what he was doing was illegal. Correct. Absolutely, he did. But because of his ASD, despite knowing all of those things, and despite being a smart person, he couldn't move away from the belief that, well, no law can really punish me for this because once everyone just sees the truth, once I'm able to just show them that we were in love and this was real, then the charges will be dropped. This case is going to— That's why I mentioned the removal of the cell phone chip. I mean, he clearly was concerned about being caught. He was because he did know that if he was caught, there was a possibility that him could be taken away from him. But that doesn't change the fact that once this happened and that the district court accepted as fact that Mr. Boukamp maintained this fixed belief. So, because the district court accepted that, that he has this medical condition and that it led to this fixed belief about his case, that should have been the end of it under the Dusky Standard, but that's not the standard the court applied here. And we can see that on page 683 of the record in the district court's own plain language where the court said, competency does not require that the defendant be able to make choices that are favorable to him. And the district court went on to explain that all that's required for competency is that the defendant be able to make a considered choice. And here, the district court said that that means that because Mr. Boukamp knew he could plead or go to trial and knew that trial could result in a stiffer sentence, that's all that's required and he's competent. But that takes rationality, which is the touchstone of Dusky, out of the equation. The district court is essentially saying that Dusky does not require the capability to make decisions based on reality. And that's not correct. This . . . If he wasn't competent to go to trial, what is your position that would have happened to him? At that point, potentially civil commitment proceedings could have begun if the government wanted to move for those or if he was unable to be made competent. But I think it's interesting or notable here that the defense expert, Dr. Kelleher, testified that she believed with time Mr. Boukamp could be made competent because there are treatments and therapies for individuals with ASD and that potentially with time he could learn coping strategies to deal with this rigid style of thinking and then be made competent to stand trial. Your focus was on sexual misconduct, right? Autistic people could be cured of . . . Committing sexual misconduct. Wasn't that the testimony? That from Dr. Garcia and Dr. Montfort, the autism experts, yes, they testified and put in their reports that there are treatments for those with autism to deal with their social ineptitudes and to learn what's appropriate and to deal with sexual misconduct. But Dr. Kelleher, the forensic psychologist, also testified that she specifically believed that Mr. Boukamp could be made competent with appropriate therapy. But what the district court did here was essentially take all of the rationality out of the equation and we can see that the Supreme Court has repeatedly equated Dusky's rational understanding component to the ability to make a rational decision. We can see that in Godinez v. Moran, Reese v. Payton, Cooper v. Oklahoma, and that makes sense. If a defendant is unable to make a rational decision about whether to go to trial or rationally consult with counsel due to a mental disease or disability, he just isn't competent. In this case, Mr. Boukamp not only could not make a rational decision about his case, he really couldn't make a decision at all. The nature of his fixed belief was that he was on this one track and despite getting new information, despite talks with counsel, he couldn't deviate from it. That also means that Mr. Boukamp could not rationally consult with counsel, which the ability to effectively communicate. The trial attorney here submitted an affidavit detailing exactly all of his issues working with Mr. Boukamp that mirror the diagnosis and Mr. Boukamp's fixed beliefs, but the district court didn't evaluate that affidavit in its opinion at all. The district court wrote off Mr. Boukamp's issues with counsel to mere stubbornness, but that conflicts with the district court's own factual finding that Mr. Boukamp has these So the district court both applied the wrong standard and even under the correct one, the district court's finding should have been dispositive that Mr. Boukamp was not competent. I do want to make one point about what we are asking from this court. We are asking for a narrow holding here to fit this unique fact-bound situation. We are not asking for an autism spectrum disorder get out of jail free card because this case is unique. We have three things that are rare. One, we have an undisputed diagnosis that is supported by the facts in the record. Two, we have factual findings by the district court both that Mr. Boukamp has this diagnosis and that it caused his fixed beliefs. And three, we have that Mr. Boukamp's fixed beliefs specifically affected his ability to rationally understand his case. So that will make this case unique even among other cases where defendants have autism spectrum disorder because that disorder can manifest in many different ways and many different levels of severity. But what makes this one different is that Mr. Boukamp's fixed thinking specifically went to his ability to rationally understand his case. Now turning to my second point, the district court's comments on Mr. Boukamp's decision not to testify serve no purpose except to highlight that he did not. We can see in the record that from jury selection through closing argument, the jury was repeatedly reminded by the court that Mr. Boukamp had the right to testify and ultimately that he didn't. So that distinguishes this case from the typical one where the prosecutor may say once during closing argument something calling attention to the fact that the defendant didn't testify. This was coming from the authority figure in the room directly to the jury. And the inevitable result was that the jury would take the district court's improper comments as comments on Mr. Boukamp's silence. And when you look at cases where this court has found error and compare it to what happened here, we can see that what happened here was much more extreme. In Davis, the court said that the defendants could testify if they wanted to. In Johnston, the prosecutor told the jury that it could not make any positive inferences about the defendant's decision not to testify. And in Murrah, the prosecutor pointed out in closing that the defendant had the right to testify when discussing credibility. The court found all of those statements to be a constitutional violation. Here we have lengthy repeated statements by the district court that blow way past that line this court has drawn in other cases. Well, counsel, it seems to me that perhaps the judge may have said more words, I don't know, than some of the other cases, but Murrah has us focus on the judge's intent to comment on the silence. It seems to me the judge to some extent was just guiding what was going on in front of the jury that ends up referring to the right to testify or not. Your client's insistence on how he was going to testify or the only way he was going to testify required the judge to make some explanation on that. Where is the intent to comment on silence as opposed to just giving the jury maybe a necessary, maybe not a necessary explanation, but I don't see the intent. Your Honor, I have two points to address that. First, I think the court can infer intent from the nature of the comments and the lengthy repeated links that the court went to to make the statement. And again, in closing argument, when the court did not instruct the jury, but rather just told Mr. Beaucamp flat out, you chose not to testify. But even if this court doesn't find intent, there can still be a constitutional error if the result was inevitably that the jury would take this as a comment on Mr. Beaucamp's silence, and we certainly have that here, especially considering how often this happened. We can see on page 1981 of the record, the court said, criminal defendants have the right to testify. You also have the right to testify if you want to, but it's the defendant's choice, right? If he chooses to, you can consider his testimony. If he chooses to testify, it's a format that I'm requiring. Clearly, he doesn't want that format. That's not a proper jury instruction. At that point, Mr. Beaucamp wasn't going to testify, but then the district court went on to provide this lengthy explanation to the jury as if he were, and even if Mr. Beaucamp was the one to initially bring up testimony in front of the jury, the district court's Constitutionally, the district court needs to say as little about this as possible, but it did the opposite, and its comments were entirely disproportionate to what Mr. Beaucamp said. The district court had reasonable options, including telling the jury to disregard Mr. Beaucamp's comment and telling him to move on, holding a bench conference or a hearing outside the presence of the jury, explaining to Mr. Beaucamp, if you do decide to testify, I can instruct the jury that this format is my doing. Instead, the district court went on to repeatedly give this statement to the jury, repeatedly mentioning Mr. Beaucamp's right to testify. It seems to me that Judge Hendricks was in a bit of a spot either to say too much or say too little. I imagine a good lawyer could make an argument out of either way Judge Hendricks went, but it does seem to me that the way the testimony went or didn't go in front of the jury was perhaps a significant matter. Isn't it fair to read what Judge Hendricks said as just being a careful explanation of the jury? Don't hold this against him. I don't see it as a wink and a nod. Don't hold it against him. Really, really don't hold it against him. I don't think that's what he was doing. I think that would be a fair thing to do if Mr. Beaucamp was in fact going to testify, but at that point he wasn't. He said, I can't testify under this format. The district court wasn't going to change the format, so if the district court wanted to appropriately address this issue, it could have given this instruction to the jury only if Mr. Beaucamp was going to testify. I thought the point though is that there was a concern that Beaucamp's trying to take advantage of the fact that he's not testifying. Your Honor, I see that I'm almost out of time if I may answer your question. Your point is there should be neutrality. There should be no inference one way or the other. There shouldn't be a positive inference. There certainly shouldn't be a negative inference. It sounds like the judge was concerned that he was going for a positive inference, and that positive inference needed to be countered. What's your reaction to that? Your Honor, I think what the district court was doing was pointing out to the jury that Mr. Beaucamp's reason for not testifying was frivolous, and that that would lead the jury to ultimately conclude that if he's not testifying, it's because he's guilty. Constitutionally, the- What would you have the judge do to make certain that nobody thinks that he's being forbidden from testifying? I would have- That would be powerful, right, for a defendant. The government's not even letting me show up. I can't defend myself. Your Honor, for one thing, the jury had already been instructed during Vordire that Mr. Beaucamp had the right to testify when the court was making the point that when he's acting as an advocate, that's not testimony. If he testifies, that's different. What the court should have done here was instructed Mr. Beaucamp, that's my ruling. Call your next witness. Or had Mr. Beaucamp approached the bench and say, if you do want to testify, I can instruct the jury that the format is my doing. But what the district court did here was just so far out of bounds with this lengthy repeated, he can testify. If he doesn't want to, that's because he has a frivolous reason. Well, but if the idea is it's not a format that he's comfortable with, somebody who just hears that could wrongly infer that this is a game, right, that the judge is simply inventing a format just to mess with the defendant, when in fact that's not true. I think that the jury would be expected and that the court would expect that the jury could follow the instructions given by the court. So if the court tells the jury, disregard Mr. Beaucamp's statement, and if the court tells the jury there's a difference between Mr. Beaucamp's role as an advocate and as a witness, the jury could follow those instructions. But that doesn't give the judge license to then go into a lengthy soliloquy about the night and that he chose not to. Thank you. All right, counsel. Thank you. Good morning, Your Honors. May it please the Court. Stephen Gilstrap on behalf of the United States. Thomas John Beaucamp preyed on a 13-year-old girl. He harassed and threatened her online to the point that she attempted suicide, and he forced her to send him child pornography repeatedly, and he blackmailed her until she felt as though there was no escape and agreed to leave her home with him. In November of 2020, M, the victim in this case, packed her baby blanket and a few clothes in her backpack, went to her middle school, and at the end of the day got in Beaucamp's car. The very first night of the trip back to Michigan, Beaucamp forced her to give him oral sex, and when they got back to Michigan, he raped her, he strangled her. He penetrated her with a turkey baster and the ceramic end of a knife, and he even ripped her braces off with pliers. Months after Beaucamp was charged, his counsel raised for the first time issues of his competency, but after multiple psychological evaluations and a full-day evidentiary hearing, the district court issued a detailed, careful 31-page opinion explaining why Beaucamp was competent, but not just competent, clearly competent under the Dusky Standard, and after Beaucamp insisted on going pro se at trial, his performance at trial caused the district court to note that Mr. Beaucamp was the smartest and the most prepared pro se defendant the district court had seen. Beaucamp received a fair trial, he was convicted, and the district court reasonably imposed a life sentence given the horrific conduct in this case and the danger that he continues to present to young girls. And while Beaucamp raises nine arguments on appeal, with my time this morning, I'll focus on the first two, as Ms. Graff did, the competency issue and the district court's alleged comments on Mr. Beaucamp's silence. On competency, two points I'd like to make at the outset. First, because the district court held an evidentiary hearing, heard from experts, this court's review is for clear error, and under the Porter case, this court has said that it will not reverse the district court's competency finding unless it is, quote, clearly arbitrary or unwarranted. And this court has intimated in Porter, as well as the Panetti case, that it's doubtful that it can ever find clear error, whereas here you have conflicting experts, where one expert says he's competent, another forensic psychologist says he's incompetent. And the second point, as I just mentioned, this was not a close call for the district court. The district court said that the government had met its burden even if the standard was by clear and convincing evidence. So as I heard Ms. Graff argue this morning, there are two arguments here underlying her competency claim. First is that the district court applied the wrong standard, and the second is that it wrongly found that he had a rational understanding of the proceedings against him. In the briefing, Beaucamp has cited no case, and certainly not one from this court, that has applied some amorphous decisional competency standard. The standard is dusky, and the district court carefully outlined the dusky standard, each prong of it, and applied that standard. And when it applied that standard, as part of the rational understanding prong, it considered whether Mr. Beaucamp had the capacity to make what it called considered choices, which sounds a lot like a reasoned choice, a rational choice, a strategic choice, which is the language that this court used in Austin. But we know that Mr. Beaucamp's proposed standard as to competency cannot be right, because that analysis appears to require a defendant to make favorable decisions, or the standard seems to be that the defendant is making decisions that an expert, a forensic psychologist, believes is the correct decision. And that cannot be the standard. In the Austin case, made plain that even if a defendant goes to trial and proceeds at trial in a way to ensure his guilt, and in that case, the death penalty, that does not show incompetence. That, in fact, shows rationality under Roberts v. Dredge. Wilkins Isn't the argument here, though, slightly different? He was not trying to get himself convicted, at least the argument is he had this belief that what he did, if he could just explain it to the jury, would be accepted, if not exonerating him, at least lightening the sentence. Is there not a different category that we're dealing with here, which is the irrationality of his belief, not that he wanted to get himself convicted, which is a separate issue? It's a slightly different issue, but I think it all comes back to this idea of is the decision ultimately favorable? And Dr. Kelleher, Mr. Bocamp's forensic psychologist, basically said, I disagree with his decision to go to trial. And I find that going to trial when the evidence is stacked against you like this, as opposed to pleading guilty, is irrational. And the government and the government's expert, Dr. Biber, disagreed with that. Because you have a situation here when you look at the evidentiary hearing and you look at the expert reports, Dr. Biber specifically says that she discussed pleading guilty with Mr. Bocamp, that he was able to discuss that option rationally, not in a way that I'm obsessed with M, so I can't possibly plead guilty. And he even said to Dr. Biber, I can plead guilty under the right terms. And in fact, when they were discussing the plea agreement, he suggested that one of the things he was worried about was entering into a plea agreement that waived his potential appellate rights. And so these aren't the discussions that are wholly irrational or not based in reality. And the notion that if I can just get in a room with M and convince her to recant her testimony, we're really in love, that sort of thing, it's not an irrational move to try and make in this case when the evidence is stacked against you. I mean, if the government's main witness were to recant her testimony or to, you know, be more equivocal, it could undermine some of the government's counts here and certainly put pressure on the government to potentially offer a better plea deal than it had originally offered in this case. The other thing that comes out when you look at the expert reports in the evidentiary hearing here is that Mr. Bocamp didn't want to go to jail. And it is wholly rational for a defendant who's facing a mountain of evidence not to want to plead guilty when he's assured of a very long sentence, roughly 30 years if he had pled guilty. And it's not irrational to say, you know, the evidence is stacked against me, but it may be a low chance that I prevail at trial, but I'm willing to roll the dice, I'm willing to throw the Hail Mary pass because in my mind, a 30-year sentence sounds a lot like a life sentence. The other two points that Dr. Kelleher focused on in her analysis was she didn't understand that Mr. Bocamp might want to testify in this case, and he didn't appreciate the risk involved. Again, this was directly contradicted by Dr. Biber, the government's expert who said that he might testify, but he might not testify if he thought it would be detrimental to his case. That's at ROA 1023 and 1024 during the evidentiary hearing. And even if Mr. Bocamp had testified and testified to his detriment, he would hardly be the first competent defendant to take the stand and testify in a way that harms his case. And the third thing that Dr. Kelleher focused on was she didn't understand why Bocamp wanted a young male jury, and she thought that this was an irrational sort of viewpoint. But given the facts at issue in this case, I would submit to you that it's wholly rational to want a jury that looks a lot like Mr. Bocamp as opposed to a jury that has parents and grandparents on it. So the three things that Dr. Kelleher based her opinions on, that he's unable to make a rational decision, when you actually dig down deep, they all have considerations, rationality, strategy underlying them all. And that's why Dr. Biber said he presented in a very different way than a lot of defendants that she had reviewed for competency, again, suggesting this is not a close call. When it comes to consulting with counsel, the district court found that Mr. Bocamp had the ability to consult with counsel, even if he wasn't always willing to. Obviously his relationship with his first counsel, Mr. Gwinn, had soured, but in talking to Dr. Biber, the government's expert, Mr. Bocamp said that he was willing to work with his new counsel, suggesting that he had the ability, even if he wasn't always willing, given a soured relationship. And I think the other thing that's important on this point, similar to the Porter case, is he cooperated with all of his psychological experts. He only cooperated in part with Dr. Biber. He was willing to do interviews, but was unwilling to cooperate in certain tests. And this court has said in the Porter case that that shows he has the ability to cooperate when he wants to, even if he's not always willing to. And in jail calls that Dr. Biber reviewed, it specifically says, she specifically said that he was able to take feedback from his parents and others about proceeding forward with his legal team. So yes, while Mr. Bocamp had autism, there's no dispute about that here. And while that may have caused some rigidity in his thinking, the suggestion that it wholly prevented rational thought here is not supported by the record. And in fact, the record contradicts that. And when you compare this case to this court's other competency precedents that are cited in the brief, the Austin case, which I've mentioned, the Panetti case, the Porter case, those are cases where you have defendants with schizophrenia, genuine delusions about, you know, why they are committing the crimes in the first place. And this court found that in those circumstances, those defendants were competent. This case, I submit to you, is not anywhere close to that line. And the other thing I would highlight on competency, the district court considered Mr. Bocamp's erroneous objections to some of the testimony from Dr. Biber to his performance at trial. When you look at this trial transcript all the way through, he had a theme going into trial. He mentioned it in his opening statement. He crossed witnesses based on that theme, and then he stuck with it in closing argument. This is a, you know, a rational way to proceed when the evidence is as difficult as it was in this case. And that's why the district court said that based on his performance, he was the most prepared and the smartest pro se defendant the court had ever seen. Moving on to the court's alleged comments about his silence, a few points at the outset, there's no dispute that plain error applies to this claim because there were no objections at trial. And it's not surprising that in, when we're dealing with alleged comments on a defendant's silence, this court has repeated time and again that context matters. And when we look at the context here, the two comments, I heard some references to throughout the trial, there are two comments that are challenged here. The first one took place on the third day of trial, and I think the backstory here is important to kind of get at some of the questions that were being asked earlier. At the, you know, in a pretrial written order, at the pretrial conference, and then earlier that day on the third day of trial, the district court reminded Mr. Bocamp out of the presence of the jury that if he were to take the stand and testify, that he would have to do it in question and answer format. Mr. Bocamp said repeatedly, I understand, including earlier that day. And so then after the jury comes in, it's Mr. Bocamp who raises the issue and says, Your Honor, I want to testify, but I don't think I can do it in using the question and answer format that you're requiring. So as Dr. — as Judge Ho was suggesting, this is a kind of affirmative play to, well, I would testify, but the district court's making me do it in a way that's unworkable in my view, and that's why I can't. So what is the district court to do in that scenario? And I would submit that it's exactly what Judge Hendricks did, which is remind the jury that Mr. Bocamp has an absolute right to testify or not to testify. It's a universal right that everybody has, and you can't — you can't draw any inference whatsoever whether he chooses to testify or not. There's a suggestion from Ms. Graff that at this point he had decided he wasn't going to testify, period. And I just don't think that's borne out by the record where you have a defendant saying, I want to testify in front of the jury. I think it's still up in the air whether he's going to testify or not, and so the court's having to deal with that on the fly. And then, because he has raised the issue of the way you're making me testify if I'm to choose to is unworkable, the district court felt compelled to go on and say, jury, he's raised this issue, this is what I require, because I think it makes for a cleaner presentation of evidence, but do not hold it against him. Do not hold any awkwardness based on the question and answer format against him. And then at that point, even though Mr. Bocamp's made the argument that by making that comment and kind of explaining what's going on to the jury, the court undermined his basis for not testifying, Mr. Bocamp gets the last word and says, it's unworkable, Judge, I'm not going to do it. And in these circumstances, I don't think there is a way to read this court's case law to suggest that there is a manifest intent by the district court to comment on the defendant's silence, especially under the plain error standard. The cases that Ms. Graff cited this morning, the Davis case, there were repeated comments in that case from the judge during a cross-examination where the judge didn't allow certain cross and said repeatedly, if you want, you can put your guys under oath, you can bring them up here, you're choosing not to. That's a very different situation than here. The Johnston case is also very different. You had multiple statements, one during a cross-examination and one during closing argument, but it wasn't just the prosecutor in that case saying a defendant has a right not to testify. Yes, the prosecutor said, I remind you that the defendant has a right not to testify, but then he says, but you can't make up a story for him, you can't play what if. It's those additional comments that this court in Johnston really had a problem with. The Murrah case, again, it's a prosecutor making a statement that you can't hold a defendant's decision not to testify against him, but what's going on in that case is there was no reason for the prosecutor to really make that statement in closing. That's why this court said that it was impermissible, ultimately affirming on harmlessness grounds in the Murrah case. But here, given the context, the district court statement is wholly understandable and I think reasonable in the circumstances. Moving on to the second comment that Bocamp takes issue with during closing argument. Again, context is important. There is a statement on page 2044 of the record where the district court says, this is not a time for you to try and testify, you chose not to. But I would ask the court to go to the preceding three pages of the transcript from 2042 up to that point where there are no fewer than three objections leading up to that where Mr. Bocamp is attempting to testify and the government is objecting and the court saying, stick to the facts and the evidence, the jury knows this is closing argument. The court's giving him a lot of leeway and he is continuing to try and testify in closing argument. And this is why context matters. And that's why the government cited the LeChance case from the 11th Circuit and the McCaskill case from the 6th Circuit because they're very similar situations where a defendant is trying to testify improperly at closing argument. And at a certain point, the district court is left with no decision other than to really shut it down. And when you have that context, when you have that backdrop, the 11th Circuit and the 6th Circuit, this is not evidence. This is a district court who is making this statement to remind the jury this is not evidence and it found no error even when a claim was preserved there. Are there other ways the judge could handle that, sidebar or just continue to uphold the objection? It was a very explicit statement about not testifying which is directly contrary to what a judge should be doing. You're saying context matters. Certainly, it does. But weren't there other ways this could have been handled that have kept that statement away from the jury? Arguably, there are, Your Honor. I mean, there could be, but, you know, my guess is if he had called a sidebar, Mr. Bocamp might be, you know, claiming that he interjected so much into his closing argument that it made him lose his train of thought or something like that. Certainly there are other ways, but on the fly during a trial when you're trying to get through closing argument and after the court has made multiple more measured comments after Mr. Bocamp continues to flout the purpose of closing argument after being told repeatedly not to do it, I think it's certainly understandable why Judge Hendricks would make that comment in the circumstances. And I think that's why the Lachance case and the McCaskill case recognize that even when you have a direct comment like that, when it's understandable that it's not a manifest intent. But even if this court were to suggest that there's something wrong with that, even in the context presented here, the government submits that any error can't satisfy the third or fourth prongs of plain error review. The three things that this court looks at, are the comments understandable in context here? I would submit that there are. This is not a situation where someone's making multiple repeated comments unjustifiably over and over again. The district court gave multiple proper and curative instructions about the defendant testifying in vore dire, in the preliminary instructions during that exchange with Bocamp about objecting to question answer format, and then in the jury instructions. Those instructions are very important under this court's case law. And finally, the overwhelming evidence against Mr. Bocamp suggests that any error when it comes to allegedly commenting on his silence did not change things one iota here. The evidence was overwhelming for the reasons stated in the government's brief, and because of that, this court should find that there's no error, but certainly no plain error as it relates to commenting on the defendant's silence. And for those reasons and the reasons stated in the government's brief, we would respectfully ask that this court affirm Bocamp's convictions and his life sentence in all respects. Thank you, Your Honors. Your Honors, two points on rebuttal. Again, the government has not responded to Mr. Bocamp's argument on competency because it can't. First, the government has accused us of asking for an amorphous decisional competency standard that isn't reflected in Dusky, but the government has never addressed that the fact that in Godinez v. Moran, the Supreme Court said that the ability to make a rational decision, there's no difference between that and a rational understanding of the case, and the court went on to give an extensive explanation of all of the decisions a person would have to make when going to trial. So if there is no rational decision component to the Dusky standard, that's just not reflected in the case law. This is also about Mr. Bocamp's abilities, his ability to make a rational decision. If you cannot make a decision in your own self-interest, you don't have a rational understanding. The government . . . What did Judge Hendricks mean when he said this is the best pro se presentation I've ever heard? Is it he was 95% doing what needed to be done as a pro se defendant, but this point you're talking about, this fixation overwhelms all of that? Correct. A couple of points to address that point, Your Honor. First, I'm not sure that it's a very high bar to be the best pro se defendant, but . . . Well, but we uphold the right of pro se defendants, and so it is significant that he more than perhaps is not satisfied with usually what you're looking for in somebody who's representing himself. I mean, it's a nice rebuttal, not a high bar, but nonetheless, it's permissible. It's not here because Mr. Bocamp, as we've said repeatedly, is a smart person, right? He can handle that. The problem is because of this fixed belief that the district court accepted, that it was one of the district court's findings, he could not make another decision, and we can see that reflected in his trial strategy, right? From the beginning in jury selection, he's talking about Romeo and Juliet. He's admitting, you know, things that he did in opening. He's talking about the fact that I loved her in closing. This is all . . . this is all reflected about his fixed beliefs, and in fact, he broke down in tears when cross-examining him because she said she didn't love him. So the fact that he did well at trial really has no bearing on the fact that he is incapable of making a rational decision about whether to go to trial and whether he is able to adopt a rational trial strategy or consult with counsel, right? This is . . . the government just wants to point out repeatedly how smart Mr. Bocamp is because he parroted an objection during a hearing and that he knows generally why a person might take a plea, but again, the government hasn't mentioned the fact that the court made this factual finding, and if we look at page 681 of the record, which is the court's opinion on competency, he said that Dr. Kelleher opined that his fixed beliefs that Doe loved him and that a 30-minute conversation would cause all charges to be dropped clouded his ability to think rationally about his case and the grave decisions involved. Indeed, Bocamp's fixed beliefs are confirmed by his jail calls. So the district court has accepted that he cannot move off of this train of thought. So whether or not there might be a rational reason to go to trial when the government has a strong case, that's not what we're dealing with here. We're dealing with the fact that Mr. Bocamp couldn't make a decision at all. There was no choice, and the district court found that. So the government's argument that going to trial on a zero-viability defense is rational, that's just not right. I'd also like to point out that the government spends a lot of time harping on the clear error standard, but if the court applied the wrong standard of competency, if the court did not apply DUSCIE, this court reviews that de novo, and there is ample evidence throughout the court's opinion that it did not apply the correct standard. How would you distinguish this case from a hypothetical criminal who thinks that all their crimes are in furtherance of some political ideology? Is it just the fact that this person happens to have the mental disability as well? Yes. It's the fact that this person was born with a— A rule or principle that allows us to distinguish this type of situation, somebody swept up by love, according to his theory, from somebody who's swept up by a political ideology. The distinguishing point here would be capability, Your Honor. Is this person capable of making a different decision, of rationally understanding that? Someone who is perhaps— Somebody who's committed to a particular political ideology and will commit any crime it takes to further that ideology. Why is that not the same problem? Because there is no physical condition that is preventing them. It's the physical condition that— Correct. Right. The diagnosis here, that means that Mr. Beaucamp cannot choose another course of action. If you had a political ideologue who commits crime out of that same fervor, and also happens to be autistic or can cite some medical, then it's hard to distinguish, you would agree? It would depend on how that person's autism manifested, yes. Thank you, Your Honors. All right, counsel. Thanks to both of you for your presentations this morning.